FILED (99)
JAN 15 2026
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**JOSEPH ANTHONY REYNA and C.R. (pseudonym),**

Plaintiffs,

v.

**23ANDME, INC.; REGENERON PHARMACEUTICALS, INC.; and DOES 1–25,**

Defendants.

C 26 00464 Case No. VKD

---

**VERIFIED COMPLAINT FOR DAMAGES,**

**DECLARATORY RELIEF, INJUNCTIVE RELIEF,**

**EQUITABLE RESTITUTION, AND PRESERVATION**

(Jury Trial Demanded Where Applicable)

---

## I. INTRODUCTION

1. This action concerns the **nonconsensual inference, retention, transfer, and monetization of Plaintiffs' genomic data**, derived from a close relative's consumer DNA test through kinship-based algorithms, followed by a confirmed data breach and post-breach modification of dispute terms.

2. Plaintiffs **never tested with 23andMe** and never consented to the inference, processing, or commercialization of their genomic identifiers.

3. Plaintiffs seek **narrow, administrable relief**: preservation of evidence, cessation of transfer or licensing of Plaintiffs' inferred genomic profiles, declaratory relief regarding post-breach arbitration, and equitable restitution.

---

## II. CLARIFICATION OF SCOPE AND LIMITATIONS

*(Disarming Preconceived Notions)*

4. This is **not a class action**. Plaintiffs seek relief only for their own inferred genomic profiles and derivative outputs attributable to them.

5. This is **not a challenge to genetic testing, biotechnology, or medical research**. Plaintiffs do not seek to impair lawful research or drug development unrelated to

Plaintiffs' inferred data.

6. This case does **not allege speculative future misuse**. Plaintiffs allege present and ongoing injury from current retention, processing, and monetization.

7. This is **not a policy or political dispute**. Legislative materials are cited only to establish non-speculative risk and contemporaneous oversight.

8. This is **not a challenge to arbitration generally**. Plaintiffs challenge only the post-breach insertion and attempted application of arbitration provisions to non-customers whose data was inferred without consent.

9. Plaintiffs do **not seek to halt Defendants' operations**. Injunctive relief is limited to Plaintiffs' inferred genomic profiles and derivative models.

10. This case can be resolved **without reaching constitutional questions**. Claims are independently supported by California statutory law, common law, and equitable doctrines.

---

## III. JURISDICTION AND VENUE

11. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1332(a). The amount in controversy exceeds $75,000.

12. Venue is proper under 28 U.S.C. § 1391 because substantial events occurred in this District, including data processing, algorithmic development, licensing, and corporate decision-making.

---

## IV. PARTIES

13. **Plaintiffs**

- **Joseph Anthony Reyna,** Austin, Texas.
- **C.R.**, Austin, Texas, proceeding under a pseudonym to protect shared genetic privacy interests. *See* Doe v. Stegall, 653 F.2d 180 (5th Cir. 1981).

14. **Defendants**

- **23andMe, Inc.**, Delaware corporation, principal place of business Mountain View, California.

- **Regeneron Pharmaceuticals, Inc.**, New York corporation; successor-in-interest to genomic assets derived from 23andMe datasets.

- **DOES 1–25**, entities or individuals involved in acquisition, licensing, modeling, or monetization of Plaintiffs' inferred genomic data.

---

## V. FACTUAL BACKGROUND

### A. Familial Genomic Inference

15. A close relative submitted a saliva kit to 23andMe using default "DNA Relatives" settings.

16. Through identity-by-descent and kinship inference algorithms, Defendants generated relationship graphs and shared-DNA metrics mathematically revealing approximately **50% of Plaintiffs' SNPs**, despite Plaintiffs having no account or contract with 23andMe.

### B. October 2023 Data Breach

17. In October 2023, credential-stuffing attacks compromised approximately 14,000 accounts and exposed **5.5–6.9 million DNA Relatives profiles**, including names, predicted

relationships, and shared-DNA metrics.

18. Plaintiffs' inferred lineage data was included within the exposed kinship graph dataset.

**C. Post-Breach Contract Modification**

19. On November 30, 2023, **after the breach**, 23andMe inserted mandatory arbitration and class-waiver provisions into its Terms of Service.

20. Plaintiffs never assented to these terms and could not meaningfully opt out as non-customers.

**D. Monetization and Transfer**

21. Defendants' patents demonstrate systematic use of familial inference for proprietary algorithms and licensing.

22. Genomic datasets incorporating Plaintiffs' inferred profiles were licensed or transferred in pharmaceutical collaborations, including transactions involving Regeneron.

### E. Ongoing Processing and Evidence Volatility

23. Genomic inference outputs, audit logs, and licensing records are time-sensitive and subject to routine deletion, migration, or modification absent preservation.

---

## VI. ARTICLE III STANDING

24. Plaintiffs suffer **concrete, particularized, and ongoing injuries**, including:

- Unauthorized retention and processing of immutable genomic identifiers;
- Loss of autonomy over genetic data use;
- Time and out-of-pocket mitigation costs;
- Foreseeable risk of profiling in insurance, employment, credit, and benefits contexts;
- Procedural deprivation via post-breach arbitration insertion;
- Evidence volatility and spoliation risk.

25. These injuries are **fairly traceable** to Defendants' conduct and **redressable** through declaratory, injunctive, and equitable relief. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

---

## VII. INDIRECT AND CONTINUING HARMS

*(Non-Exhaustive)*

26. **Immutability Harm**: Genomic identifiers cannot be replaced; exposure is permanent.

27. **Relational Harm**: Kinship inference enables re-identification of non-parties and disclosure of sensitive family information.

28. **Mitigation Costs**: Plaintiffs expended time and resources on privacy and security remediation.

29. **Discrimination Risk**: Unauthorized genomic data increases foreseeable risk of profiling and exclusion.

30. **Procedural Harm**: Retroactive arbitration chills claims and suppresses enforcement.

31. **Continuing Violation**: Each day of retention, modeling, or licensing constitutes a new injury.

---

## VIII. CAUSES OF ACTION

### Count I — Violation of CCPA/CPRA (Cal. Civ. Code § 1798.150)

32. Defendants failed to implement reasonable security and unlawfully retained and processed personal information without consent.

### Count II — Intrusion Upon Seclusion (Common Law)

33. Defendants intentionally intruded into Plaintiffs' genetic zone of privacy in a highly offensive manner.

### Count III — Unjust Enrichment / Constructive Trust

34. Defendants obtained and retained commercial benefit from Plaintiffs' inferred genomic data without consent or compensation.

**Count IV — Unfair Competition (Cal. Bus. & Prof. Code § 17200)**

35. Post-breach arbitration insertion and continued monetization constitute unfair and unlawful business practices.

**Count V — Declaratory Relief (28 U.S.C. § 2201)**

36. A declaration is required that post-breach arbitration provisions cannot bind non-customers whose data was inferred without consent.

---

## IX. EQUITABLE AND PROCEDURAL DOCTRINES SUPPORTING RELIEF

37. **Continuing Tort Doctrine**: Ongoing retention and processing restart the limitations period.

38. **Unconstitutional Conditions (Procedural)**: Defendants cannot condition post-breach redress on retroactive waiver of rights.

39. **Equitable Bailment**: Upon possession and control of inferred genomic data, Defendants owed duties of care and non-exploitation.

40. **Constructive Trust**: Equity requires separation of unjustly retained benefits derived from Plaintiffs' inferred data.

41. **Preservation Authority**: Evidence volatility warrants immediate preservation under the Court's inherent authority.

---

## X. INJUNCTIVE RELIEF (NARROWLY TAILORED)

42. Plaintiffs seek preliminary and permanent injunctions to:

- Prohibit transfer, sale, or licensing of **Plaintiffs' inferred genomic profiles and derivative models;**
- Require preservation of all relevant datasets, logs, and agreements;
- Enjoin enforcement of post-breach arbitration provisions as applied to Plaintiffs.

---

## XI. PRAYER FOR RELIEF

Plaintiffs respectfully request:

A. Statutory, compensatory, and equitable damages of not less than **$175,000**;

B. Restitution, disgorgement, and constructive trust relief;

C. Declaratory and injunctive relief as set forth above;

D. Such other relief as the Court deems just and proper.

---

## XII. JURY DEMAND

Plaintiffs demand a jury trial on all triable issues.

---

## XIII. VERIFICATION

I, Joseph Anthony Reyna, declare under penalty of perjury that the foregoing is true and correct.

Executed in Travis County, Texas, on December 27, 2025.



Joseph Anthony Reyna, Pro Se

C.R., Pro Se (pseudonym)

## XIV. CERTIFICATE OF SERVICE

Service shall be effected by the U.S. Marshals Service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3) upon issuance of summons.

# ADDENDUM A

## NON-RETROACTIVITY OF POST-HARM ARBITRATION AND CLASS-WAIVER PROVISIONS

**(Supplemental Authority)**

---

## I. RECENT FEDERAL AUTHORITY

**Edwards v. TikTok, Inc.,**
C.D. Cal. Case No. 5:25-cv-01216-JGB (Order dated Sept. 11, 2025)

1. In *Edwards v. TikTok, Inc.*, the court addressed whether a digital platform could compel arbitration based on revised arbitration and class-action waiver provisions adopted **after** alleged user harms had already accrued.

2. The court compelled arbitration **only under the operative Terms of Service in effect at the time the claims accrued**, rejecting TikTok's attempt to apply later-adopted arbitration provisions retroactively.

3. The court's ruling confirmed a settled principle of contract law:
**post-harm contractual modifications cannot retroactively extinguish accrued statutory or common-law rights.**

4. Plaintiff Joseph Anthony Reyna (JoeCat®) is a represented claimant in the mass-arbitration proceedings arising from *Edwards* and proceeds under the framework the court expressly validated.

---

## II. APPLICATION TO THIS ACTION

5. Defendants here similarly seek to rely on arbitration and class-waiver provisions that were:

   - adopted or expanded **after** the alleged data breach and data-misuse events; and

   - never assented to by Plaintiffs, who are non-customers and non-signatories.

6. As in *Edwards*, Defendants' theory depends on retroactively applying later contractual terms to pre-existing injuries. That approach is legally inoperative.

7. Plaintiffs' claims accrued at the time their alleged injuries occurred. Once accrued, those claims became **vested rights**, which cannot be eliminated by unilateral post-hoc contractual edits.

---

## III. INDEPENDENT LEGAL GROUNDS CONFIRMING NON-ENFORCEABILITY

### A. Vested-Rights Doctrine

8. Both federal and California law recognize that once a cause of action accrues, it constitutes a vested property right that cannot be retroactively impaired absent clear legislative authorization.

9. Private contractual revisions adopted after accrual cannot divest such vested rights.

---

### B. Lack of Assent and Non-Signatory Status

10. Plaintiffs never assented to Defendants' arbitration provisions and did not knowingly exploit any contract containing such provisions.

11. Arbitration cannot be imposed on non-signatories absent clear evidence of knowing, affirmative assent, which is not present here.

---

### C. Illusory and Unilateral Modification

12. Post-harm insertion of arbitration and class-waiver provisions, without new consideration or affirmative assent, constitutes unilateral modification and is unenforceable as applied to prior conduct.

---

### D. Public Injunctive Relief Exception

13. Plaintiffs seek forward-looking relief to halt unlawful data practices and prevent continued misuse of inferred genomic data.

14. To the extent Defendants' arbitration provisions purport to waive the right to pursue public injunctive relief, such waivers are unenforceable under California law and are not preempted by the Federal Arbitration Act.

---

## IV. LIMITED PURPOSE AND PROCEDURAL POSTURE

15. Plaintiffs submit this Addendum solely to identify persuasive authority and settled doctrines relevant to any anticipated arbitration defense.

16. Plaintiffs do not request that the Court resolve arbitration at this stage, but rather recognize that:

- post-harm arbitration provisions are facially inapplicable to Plaintiffs' claims; and
- threshold issues of assent, timing, and vested rights must be resolved before any arbitration can be compelled.

---

## V. CONCLUSION

17. *Edwards v. TikTok, Inc.* confirms what long-standing doctrine already provides: **arbitration clauses may govern forum selection only to the extent they existed at the time a claim accrued, were assented to by the party sought to be bound, and do not operate retroactively to extinguish vested statutory or public rights.**

18. Defendants' post-breach arbitration provisions therefore do not bar Plaintiffs' claims or deprive this Court of jurisdiction.

---

**Respectfully submitted,**

Joseph Anthony Reyna (JoeCat®), Pro Se
C.R. (pseudonym), Pro Se

---